**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| IN RE:<br><br>GLOBAL PROCESSING, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-00669<br><br>**MOTION FOR AUTHORITY TO PROCESS AND SELL INVENTORY AND TO OPERATE BUSINESS** |

COMES NOW the Debtor, Global Processing, Inc., by and through its undersigned counsel, and hereby requests that the Court enter an Order Authorizing the Debtor to Process and Sell Inventory and to operate its business, and in support thereof states the following:

1. The Debtor is an Iowa corporation duly organized under the laws of the State of Iowa, with its principal place of business located in Kanawha, Hancock County, Iowa.
2. On October 24, 2022, (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Iowa.
3. The Debtor remains in possession of its assets and wishes to continue to operate as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 & 1108.
4. The Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 157 and 1334 and an Order of Reference from the United States District Court for the Northern District of Iowa dated April 30, 1986. Venue is proper pursuant to 28 U.S.C. § 1408.
5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N), & (O).
6. The Debtor is in the business of buying, selling, cleaning, and processing non-GMO and organic soybeans.
7. The Debtor currently has in its possession approximately 90,000 bushels of soybeans of which the majority are non-GMO soybeans.

8. The Debtor currently has a sale contract with Wheaton Grain, Inc. for the sale of 100,000 bushels of non-GMO soybeans.

9. The Debtor has been in communication with Midwest Soya International, Inc. regarding cleaning and processing non-GMO soybeans for Midwest Soya International, Inc. The Debtor has sufficient bean space to accept non-GMO soybeans from Midwest Soya International, Inc. and keep the non-GMO soybeans segregated from all other soybeans in its facilities.

10. Prior to the Petition Date, the State of Iowa, Iowa Department of Agriculture and Land Stewardship ("IDALS"), suspended the Debtor's Grain Dealer and Warehouse license and commenced an administrative action seeking to formally revoke the license. Counsel for the IDALS has expressed concern that the soybeans will be subject to spoilage.

11. The IDALS sent representatives to the Debtor's Kanawha facilities to measure the grain and has given notice to the Debtor that it cannot move any grain through the facility.

12. Based on communications with the IDALS, the Debtor's understanding was that the Debtor could buy grain on a cash basis and store its own grain without the Grain Dealer and Warehouse license. Subsequently, the Debtor has been informed that it cannot buy and sell grain on a cash basis without a grain dealer's license or a court order. An IDALS representative is on site at Kanawha. Based on communications from the Debtor, the representative has told the Debtor's employees that they could not process any soybeans.

13. Similar actions were taken at the Debtor's facility in Hope, Minnesota.

14. The Debtor has engaged in negotiations with the respective offices of the Attorney Generals of Minnesota and Iowa. To date the Attorney Generals and the Debtor have not reached an agreement about the processing and sale of the non-GMO and organic soybeans that were on site on the Petition Date.

15. Additionally, the IDALS has taken the position that the Debtor cannot operate its custom grain processing business without permission of the IDALS.

16. Under the Bankruptcy Code, a Debtor-in-Possession has all of the rights and duties of a trustee with certain exceptions. 11 U.S.C. § 1106 & 1107. The Bankruptcy Code permits a Debtor-in-Possession to operate its business. 11 U.S.C. § 1108.

17. The Debtor operates multiple facilities that process organic and non-GMO soybeans. It has the ability to process soybeans on a custom basis for third-party customers.

18. The Debtor also has customers for the soybeans that are in its possession and are property of the bankruptcy estate. The Debtor has the ability to process and sell the grain.

19. Under 11 U.S.C. § 363, the Debtor-in-Possession may use and sell property of the bankruptcy estate in the ordinary course of business.

20. To the extent that the processing and sale of the soybeans that are property of the bankruptcy estate are actions taken in the ordinary course of business of the Debtor, the Debtor requests that the Court enter an Order authorizing the Debtor to resume its business activities except for the purchase of grain on credit, and direct the representatives of the States of Iowa and Minnesota to remove any and all impediment to the business activities.

21. To the extent that the States of Iowa or Minnesota assert that the Debtor cannot process and sell its grain inventory in the ordinary course of business, the Debtor requests authority to process and sell the grain inventory free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363. The Debtor requests that the Court grant its costs of processing the inventory and its normal profit margin to be deducted from the sale proceeds. All liens and encumbrances should attach to the proceeds in the same priority as were attached to the inventory.

22. The grain inventory benefits no one remaining in the bins at the Debtor's locations. The highest and best value for the estate is for the grain to be processed and sold.

23. Additionally, the best use for the Debtor's facilities is to be used for the processing and marketing of non-GMO and organic soybeans. At a minimum, the Debtor should be permitted to process the current grain inventory and to custom process grain for third parties.

24. Attached hereto as **Exhibit 1**, and incorporated herein by reference, is the Debtor's Proposed Processing Value Added Analysis indicating the amount of expected value to be added to the Debtor's estate if the current inventory is allowed to be processed.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order authorizing it to operate its business and process non-GMO and organic soybeans for third parties in the ordinary course of business, to process and sell its grain inventory in the ordinary course of business, and to purchase grain on a cash basis moving forward. The Debtor further requests the Court grant such other relief as is just and appropriate under the circumstances.

Dated this 29th day of December 2022.

Respectfully submitted,
DAY RETTIG MARTIN, P.C.

/s/ Erica L. Yoder
Erica L. Yoder AT0008684
Ronald C. Martin AT0005050
P.O. Box 2877
Cedar Rapids, Iowa 52406-2877
Telephone: (319) 365-0437
FAX: (319) 365-5866
E-mail: eyoder@drpjlaw.com
ronm@drpjlaw.com
ATTORNEYS FOR DEBTOR

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of December 2022, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System. The undersigned further certifies the foregoing document was sent to persons or representatives via electronic mail or U.S. Mail postage pre-paid as set forth below.

Signed: /s/ Susan M. Daves

Exhibit 1

## GLOBAL PROCESSING INC
### PROPOSED PROCESSING VALUE ADDED ANALYSIS

**PROCESSING OF CURRENT INVENTORY TO SELL TO WHEATON GRAINS**

| | | |
|---|---|---|
| Current soybean inventory | 60,040 | bu at Kanawha |
| | 39,175 | bu at Hope |
| | 99,215 | |
| Yield after cleaning | 89,294 | assumes 10% loss |
| | | |
| Selling price to Wheaton | $15.00 | CBOT |
| | $2.55 | Contract Premium |
| | $1.50 | Additional Cleaning Charge |
| | $19.05 | per bu |
| | | |
| Total Sales | $1,701,041.18 | |
| | | |
| Variable Costs | | |
| Labor | $5,760.00 | 4 men * 2 weeks * $18/hr avg |
| Payroll taxes | $576.00 | |
| Plant Electricity (incremental) | $2,000 | (estimate) |
| Maintenance (incremental) | $1,000 | (estimate) |
| Total | $9,336 | |
| | | |
| Gross Margin Contribution before overhead | $1,691,705 | |
| | | |
| Overhead allocation for one month | | |
| Payroll | $144,240 | |
| Payroll Taxes | $14,424 | |
| Utilities | $8,000 | |
| Rent | $12,500 | |
| Insurance and Benefits | $14,000 | |
| Maintenance | $4,000 | |
| Other misc and fixed costs | $10,000 | |
| | $207,164 | |
| | | |
| Net - Contribution to Creditors | $1,484,541 | |

Assumptions
1. Two weeks to process
2. Wheaton pays for any additional packaging
3. 2 men per plant to process 40 hours per week
4. CBOT $15/bu

Exhibit 1

**PROCESSING OF MIDWEST SOYA SOYBEANS**

Five loads per month Jan - March

| | | |
|---|---|---|
| Quantity per month | 4166.25 | bu (5*25*33.33) |
| Total Revenue per month | $6,249 | per month |
| Variable Costs | | |
| Labor | $1,440 | 2 men * 1 week * $18/hr avg |
| Payroll taxes | $144 | |
| Plant Electricity (incremental) | $500 | |
| Maintenance (incremental) | $250 | |
| Total | $2,334 | |
| Gross Margin Contribution to Overhead | $3,915 | per month |
| Total Gross Margin Contribution to Overhead | $11,746 | |

Assumptions

1. One week per month to process
2. Midwest Soya pays for any additional packaging
3. 2 men to process 40 hours per week