UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>GLOBAL PROCESSING, INC.,<br><br>Debtor. | Bankruptcy Case No. 22-00669<br>Chapter 11<br><br>**OBJECTION TO MOTION FOR AUTHORITY TO PROCESS AND SELL INVENTORY AND OPERATE BUSINESS** |

COMES NOW the Iowa Department of Agriculture and Land Stewardship ("IDALS") and the Iowa Grain Depositors and Sellers Indemnity Fund ("Fund"), by and through its undersigned counsel, and hereby requests that the Court deny Debtor's Motion for Authority to Process and Sell Inventory and Operate Business, and in support thereof states the following:

1. On December 29, 2022, Debtor Global Processing, Inc. ("Debtor") filed a Motion for Authority to Process and Sell Inventory and to Operate Business ("Motion").

2. The Debtor remains in possession of its assets, including, but not limited to, approximately 90,000 bushels of soybeans, and wishes to continue to operate as a Debtor-in-Possession. Specifically, the Debtor wants to: 1) sell the soybeans it currently possesses; 2) process soybeans on a custom basis for third-party customers; and 3) purchase grain on a cash basis moving forward.

3. IDALS and the Fund have significant concerns about Debtor's ability to operate going forward and generate a profit as well as maintain proper record-keeping and financials under current management. IDALS and the Fund share many of the same concerns the Minnesota Department of Agriculture ("MDA") raised in its Objection (Dkt. 106). Moreover, Debtor's Motion does not address the existence of grain Debtor is holding in storage that is not

property of the estate. A producer owns 1,676.59 bushels that are currently in storge at Global's Kanawha, Iowa facility, which is documented on two scale tickets. It is IDALS understanding that the bushels subject to the outstanding storage obligation are co-mingled with Global's existing company owned grain inventory. The producer should be entitled to withdraw those bushels prior to any sale of the grain inventory, and it is IDALS understanding that the producer wishes to withdraw the grain.

4. Debtor filed for bankruptcy because it loses a substantial amount of money on an operating basis—over $5 million dollars net operating loss for the twelve months ending October 31, 2022. Debtor's proposed "plan" for operating going forward and avoiding losses is vague, does not adequately address the reasons for the substantial ongoing net operating loss, and fails to disclose what will be done with the proceeds of the inventory sale.

5. Debtor has an enforcement history with IDALS, and the most recent enforcement action demonstrates that Debtor's record-keeping and accounting practices are woefully inadequate. In 2018, IDALS fined Global $5,000.00 for issuing collateral warehouse receipts without proper ownership of grain, resulting in a shortage of grain to producers. In 2021, IDALS fined Global $5,000.00 for failing to pay for grain within thirty days of delivery and holding issued checks in excess of five days after a producer attempted to cash a check from Global and was returned for insufficient funds. Finally, in the most recent enforcement action, IDALS suspended Global's warehouse and grain dealer licenses on October 6, 2022, for holding checks—approximately 145 checks, totaling $4,731,807.16—in excess of five days and failing to have sufficient funds to cover the held checks. IDALS also directed Global to cease any grain purchases and not receive or ship any grain in or out of the facility at Kanawha, Iowa.

6. In addition, Debtor continues to be managed by its president, David Wilcox, who

is a convicted felon. He pled guilty in 2016 to a federal charge of making false statements to the Small Business Administration in connection with a federally-guaranteed bank loan used to help finance Wilcox's prior grain business—Verified Grain, Inc. Debtor's records show a pattern of self-dealing by Wilcox. For instance, Debtor paid a debt owed by Wilcox personally to a third party (for his cattle farm ("Peacock Cattle Co.")), allegedly as a "bonus" to Wilcox, and has made several direct payments for supplies for Peacock Cattle Co. Debtor has not been forthright about these self-dealing payments. Debtor's original schedules filed in this case simply listed the payment as a legitimate business expense of the Debtor (meaning it was listed as if the debtor owed the debt to the third-party). After questioning at the debtor's examination, Debtor amended its schedules to reclassify it as a "bonus" to Wilcox. Moreover, while Debtor's original schedules filed in this case listed a $5,300.00 payment for an embryo (for Peacock Cattle Co.) under the category for payments made within one year before bankruptcy filing that benefited any insider, Debtor made an additional payment on behalf of Peacock Cattle Co. of $2,750.00 on or about June 1, 2022, which is not listed on the original schedules and was not included on the list of Debtor's recent amendment to its schedules.

7. IDALS and the Fund support an orderly liquidation of the Debtor's grain inventory. The agencies oppose a liquidation of inventory with no reliable oversight, and no clear plan for how the proceeds will be held. IDALS and the Fund also oppose allowing Debtor to purchase any grain in Iowa, on a cash or any other basis. Finally, IDALS supports Debtor's custom processing of soybeans for third-party customers as long as there is credible oversight, appropriate measures to ensure the grain from third-party customers is not co-mingled with the Debtor's current grain inventory, and Debtor can demonstrate that custom processing will generate a profit.

8. There is no need for a quick sale of inventory and there is no emergency. The grain is not at risk of spoilage in the winter, which Debtor admits. Debtor has had two months to get a motion on file for an inventory sale but filed nothing. Moreover, Debtor had the option of seeking to resolve the outstanding grain storage obligation in an expedited fashion under 11 U.S.C. section 557 but opted against it.

9. The creditors will benefit from a more orderly and transparent process, with a clear plan for how the proceeds of the sale will be handled.

10. IDALS and the Fund respectfully requests the Court deny the Debtor's Motion without prejudice, affording Debtor the opportunity to file a motion limited to an inventory sale that includes clear and enforceable guardrails to protect the creditors' interest in the proceeds of a sale, addresses the outstanding grain storage obligation, and demonstrates custom processing of beans can generate a profit. IDALS requests the Court deny the remainder of the Debtor's motion, with prejudice.

**BACKGROUND**

11. IDALS regulates grain buyers and grain storage facilities operating in Iowa. *See* Iowa Code chapters 203, 203C and 203D. Debtor holds a grain dealer license and grain warehouse license in Iowa. Among other things, IDALS regulates grain buyers and grain storage facilities to ensure they have the financial ability to meet their obligations to pay farmers when they purchase grain or cover outstanding storage obligations. *See, e.g.* Iowa Code §§ 203.3(4) and 203C.6(4).

12. The Fund was created to provide for indemnification for grain sellers or owners of a grain in storage for losses in the event a licensed grain dealer or warehouse becomes insolvent or files for bankruptcy. Iowa Code § 203D.6. The Fund is in the middle of the 120-day statutory

claim period for any losses as a result of the Debtor's bankruptcy filing. *See* Iowa Code § 203D.6(2). In the event the Fund makes any payments for a loss, including those who could assert Section 503(b)(9) claims, the Fund is subrogated by statute to the grain producer's rights, powers, privileges, and remedies for that claim. *See* Iowa Code § 203D.6(9).

13. Dave Wilcox, President of Global, has had a long history of warehouse and grain dealer violations with both of his licensed entities, Global and Verified Grain, Inc.

14. Verified Grain, Inc.'s grain dealer license was suspended on April 7, 2011, for failing to submit financial statements. The license was re-instated on April 14, 2011, after Verified Grain, Inc. submitted a financial statement that satisfied all requirements.

15. Verified Grain, Inc.'s grain dealer license was suspended again on May 23, 2013. Verified Grain, Inc.'s grain dealer license was permanently revoked November 13, 2013, due to the company failing to file financial statements and failing to meet the net worth requirements set forth in the Iowa Code.

16. Mr. Wilcox then proceeded to create a new grain entity, Global Processing, Inc., on November 20, 2013. Similar to Verified Grain, Inc., Global has a history of violations. In 2018, IDALS fined Global $5,000.00 for issuing collateral warehouse receipts without proper ownership of grain, resulting in a shortage of grain to producers. In 2021, IDALS fined Global $5,000.00 for failing to pay for grain within thirty days of delivery and holding issued checks in excess of five days after a producer attempted to cash a check from Global and was returned for insufficient funds.

17. Finally, in the most recent enforcement action, IDALS suspended Global's warehouse and grain dealer licenses on October 6, 2022, for holding checks—approximately 145 checks, totaling $4,731,807.16—in excess of five days and failing to have sufficient funds to

cover the held checks. IDALS also directed Global to cease any grain purchases and not receive or ship any grain in or out of the facility at Kanawha, Iowa. During IDALS' investigation of Global, the agency received copies of checks on four separate days from Global staff, who admitted that he checks were kept in various file cabinets, folders, and safes.

18. On November 14, Debtor made a proposal to IDALS and MDA to sell its existing soybean inventory and "retain 50% of the sale proceeds to use in operations and to escrow 50% of the proceeds pending resolution of the issues with the Minnesota and Iowa Attorney General offices." Debtor provided no meaningful financial information in connection with its proposals. Indeed, the debtor had not yet even filed its bankruptcy schedules.[1]

19. On November 29, 2022, IDALS' counsel informed Debtor that the proposal was insufficient because it lacked any specifics or explanations for why Debtor thinks it could operate at a profit going forward. IDALS also notified Debtor that the proposal failed to address the bushels at the Kanawha facility that are held in open storage under Global's warehouse license, and IDALS would not agree to the sale of any beans unless the open storage obligation was addressed first.

20. Thereafter, Debtor and IDALS continued discussions about the sale of the grain inventory, with IDALS repeatedly notifying Debtor that it would not agree to the sale of any grain until the Debtor's open storage obligation was addressed because that grain was not owned by Debtor and was not part of the bankruptcy estate.

21. On December 14, 2022, IDALS' counsel notified Debtor that, while IDALS was not opposed to Debtor custom processing beans for third-party customers, IDALS did want

[1] The debtor did eventually provide an alleged inventory statement for its Kanawha, Iowa facility, but it was inaccurate. Debtor's inventory listed approximately 37,650.3 bushels of soybeans, whereas IDALS had previously measured Debtor's inventory at Kanawha twice, observing 55,572 bushels.

assurances that the custom processing would not result in any comingling of the grain with existing inventory until the open storage obligation is addressed. IDALS further notified Debtor that, given Global's past record keeping problems and proper accounting, IDALS was simply concerned about proper organization and documentation going forward with custom processing and disposition of clean-out beans.

22. On December 22, Debtor informed IDALS' counsel (and MDA's counsel) that it intended to file a motion with the Court to sell inventory, and more generally to operate. It also indicated it intended to have the motion heard on an expedited basis. IDALS' counsel provided dates of availability for the motion, but also stated IDALS would object to the request for expedited treatment. On December 28, after 6:00 p.m., the debtor filed this motion, requesting a January 4 hearing date – effectively giving IDALS two business days to respond because of the holiday.

**ARGUMENT**

23. Debtor's motion for an inventory sale should be denied. It proposes to sell grain that it does not own and is not part of the bankruptcy estate. The producer should be entitled to withdraw those bushels prior to any sale of the grain inventory, and Debtor has been aware of this issue and IDALS' position for some time.

24. It should also be denied for the reasons set forth in MDA's objection (Dkt. 106) to the Motion, including: 1) the proposed transaction is not an ordinary course transaction; 2) there are significant concerns with debtor's record-keeping, accounting practices, and the competence and honesty of its president; 3) Debtor's proposed plan does not demonstrate Global will be able to operate and generate a profit going forward; and 4) Debtor's proposal to continue operating and purchasing grain without a license (which Iowa has suspended) would violate Iowa Code

chapter 203.

**CONCLUSION**

For the reasons set forth above, IDALS and the Fund request that Debtor's motion for a sale of inventory and operation of the custom processing for third parties be denied, without prejudice, and the remainder of its motion be denied with prejudice.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

/s/ *Jacob J. Larson*
JACOB J. LARSON
Assistant Attorneys General
Office of Iowa Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, Iowa 50319
Phone: (515) 281-5341
Fax: (515) 281-4209
E-mail: jacob.larson@ag.iowa.gov
ATTORNEYS FOR THE
IOWA DEPARTMENT OF AGRICULTURE
AND LAND STEWARDSHIP AND IOWA
GRAIN DEPOSITORS AND SELLERS
INDEMNITY FUND

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

**DATE:** January 3, 2023

*/s/ Jacob J. Larson*
JACOB J. LARSON
Assistant Attorney General
jacob.larson@ag.iowa.gov

Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone: (515) 281-5164
Fax: (515) 281-4209
ATTORNEYS FOR DEFENDANTS